Good morning. Our next case this morning is Ross v. Gossett, 20-1992. Good morning, counsel. Good morning. Good morning. And whenever you're ready, Ms. Knotts, we'll begin with you. Thank you, Your Honor, and may it please the Court. My name is Jane Eleanor Knotts. I'm the Illinois Solicitor General. On behalf of the defendants' appellants in this case, and I am planning to reserve five minutes for rebuttal. This is a permissive appeal from the District Court's decision certifying a Rule 23b3 class of nearly 10,000 inmates in the Illinois Department of Corrections. These inmates were part of prison-wide searches that occurred in four different prisons over 29 different days in 2014. Although the plaintiffs sued approximately 500 department employees, they sought class certification against 22 supervisors only. They alleged that these supervisors together planned and executed the shakedowns in a manner that violated the class members' Eighth Amendment rights. The defendants denied that the shakedowns occurred as plaintiffs alleged, which would have been contrary to the department's written policies and training. The District Court certified the class based at least in part in the Court's own words on plaintiffs' allegations rather than on the evidence. The Court did not hold plaintiffs to their burden of presenting significant proof of their alleged policy. And the Court did not meaningfully consider whether even if plaintiffs had sufficient proof of their policy, resolving the question whether plaintiffs' policy existed would decide anything more than a very small part of the case. The District Court's decision rests on factual and legal errors and should be reversed. This note, in the brief, you rely on Walmart stores versus Duke to argue that the plaintiffs are required to offer significant statistical proof. But wasn't the situation in Walmart fundamentally different than the one in this case in that Walmart involved a decentralized structure in which each supervisor had discretion as to the employment decisions. So the plaintiffs had to show a common plan despite that. Whereas in this case, it seems to be undisputed that the shakedowns were conducted under a centralized uniform plan. So if you could help me with that. Certainly, Your Honor. You are correct that in this case, the defendants admit that there was a policy. The problem for plaintiffs is that the policy that defendants admit to is quite different from the policy that plaintiffs alleged was concocted and implemented. And in that regard, this case is very much like Walmart because in Walmart, the defendants there admitted they had policies relating to the promotion and salaries of Walmart employees. However, what the plaintiffs were saying is that and what they were challenging is that at Walmart, the company had different policies. They had unwritten policies that were discriminatory. And what the Supreme Court said under those circumstances is that where a plaintiff is challenging a alleged policy by defendants that the defendants dispute existed, the plaintiff needs significant proof of that policy to establish commonality. Forgive me. Forgive me, Ms. Notes. But didn't the defendants themselves acknowledge that the manner in which the shakedowns proceeded was structured and pursuant to a common plan and that there was no need to provide significant proof of the existence of a common plan or policy? What am I missing? So I think what you're, I hate to say you're missing anything, but our view is that this case is just like Walmart in that just as in Walmart, there's an admission by defendants of a policy. The problem for plaintiffs is that the policy that defendants admit to is not the policy that plaintiffs are challenging. And if Your Honor's view respectfully of Walmart were correct, what it would mean in our view is that a plaintiff could establish commonality in our circumstances based on the testimony of a single inmate that he was subjected to an unconstitutional shakedown. And he believes that that was a result of a policy concocted at the supervisory level. And that's simply not the law. Walmart makes clear that where a plaintiff is challenging a plan or a policy that the defendant disputes exists, a plaintiff must present significant proof of that policy because otherwise there is simply no glue. There's no policy or unwritten practice common to hold the class together. And again, when you're- Why wouldn't it be sufficient, Ms. Knowles, why wouldn't it be sufficient here that if the defendants have conceded that the shakedowns and the policy about the shakedowns, that was a uniform policy, why wouldn't that be sufficient to establish commonality? And the issues that you're raising about precisely how that policy was executed, why wouldn't that go to the merits as opposed to the commonality question here, given again the admission that the shakedown policy itself was uniform? Well, I certainly agree that it's relevant to the merits. But what this court's cases make clear following Supreme Court precedent is that to decide commonality, typicality, and predominance, the district court does have to take a peek at the merits, right? To make sure that plaintiffs have sufficient evidence to establish each of the Rule 23 requirements. And here, plaintiffs don't have sufficient evidence to establish those requirements. First, because they lack significant proof that the shakedown was conducted pursuant to the policy that they allege, as opposed to pursuant to a different and constitutional policy. And then second, moving on to predominance, plaintiffs... Didn't the parties agree that the shakedowns were effectuated pursuant to a uniform plan with only minor variations based on each prison's physical layout? No, that was not the party's agreement at all. The plaintiffs have alleged a policy that's very different from the policy the defendants made was followed. The defendants deny that there was any policy of reverse strip searching the inmates. The defendants deny that there was any policy of handcuffing inmates in a way that was unconstitutionally too tight. The defendants deny that there was any policy of requiring the inmates to walk so closely together that one inmate's genitals touched another's backside. So the only agreement there is is that there was a policy. The disagreement is over what that policy was. So is it your position, Ms. Jones, that the common question then has to include part of the illegal behavior? That the common question and what the uniformity has to go include some element of unconstitutionality as opposed to just a common plan? Do you understand my question? I'm sorry, I didn't. Do you mind rephrasing? I read the record as saying that the defendants have conceded that the policy about the shakedowns, that that policy was uniform. Right. You're saying that yes, it was, but our description of uniform is different than the plaintiff's description of uniform. And the plaintiff's description of what was uniform includes all of the alleged unconstitutional aspects of it. So my question for you is, does the common question and uniformity have to include the unconstitutional aspects here? Okay, so I guess I'd like to make two points. First, from the supervisor's perspective, the supervisor's view is that there was a uniform plan. We don't dispute the possibility that there may be instances in which an individual inmate was subjected to unconstitutional behavior. We just think that has to be resolved on an individualized basis. Right, and I think that's why they sought the certification against just the 22 defendants who were supervisors. The plaintiffs acknowledged that. That is, and our view is, though, and we've been talking a lot about commonality, and I see my time is short. If I could just touch on predominance so I don't save that entirely into rebuttal. You know, even if this court thinks that there was significant proof or there was no significant proof requirement, this case still is not suitable for a B3 class. Remember, this is a damages class. This is not an injunctive class. And that's so for two reasons. First, a failure of proof by plaintiffs on the proposed common question, the existence of the policy, is going to result in individual questions predominating. The class members' claims will not fall in unison. This was the point that the court made in Dansell recently. Because all that's going to happen, even if plaintiffs are unsuccessful in proving their policy, is that every class member will be able to bring his own Eighth Amendment claim following the exact same theory. I was subjected to an unconstitutional shakedown at the hands of these TAC team officers, and relying on the exact same proof that's presented here, the inmate anecdotes about their experiences. And then the second reason why there's not predominance is that regardless of how the court were, the district court were to answer the policy question, even if it were to answer it for plaintiffs, individual questions would still predominate because no defendant could be held liable without answering some critical questions. First, which aspects of the shakedown was an inmate subjected to? And then second, insofar as the inmate was subjected to certain aspects, are those aspects unconstitutional as to that inmate? And I'd like to provide a couple of examples just to illustrate these points. First, we know from even the limited sample of inmates that we have, barely more than 50% said they were subjected to a reverse strip search. So nearly half of them didn't complain about a reverse strip search. And in fact, a meaningful percentage, upwards of 10%, affirmatively said they were not reverse strip searched. So even answering the policy question for plaintiffs will mean that the district court will have to decide on an inmate-by-inmate basis, was an inmate subjected to the reverse strip search? And then, in addition, other- Is that true, Ms. Notes, as to the supervisory defendants, rather than the officers executing it on a line basis? Your Honor, yes it is. I know that the plaintiffs have argued that insofar as the 22 supervisors are concerned, a decision for defendants on the policy question would absolve them from liability. I don't think that's true for a couple of reasons. The first reason is 19 of them were actually present for some of the shakedowns, so they theoretically could still be held liable, regardless of how the policy question is answered. And even so, even if they were all absolved of liability, that still would not preclude a class member from bringing his own individual claim, arguing based on the same evidence, the inmate's experience, that he was subjected to an unconstitutional shakedown at the hands of the TAC team members. And now I see my time is really short, so if the court doesn't mind, I'll sit down for a few minutes. Okay, thank you. Thank you. Ms. Grady? Thank you, Judge Saini, and may it please the court. The parties in this case agree that the shakedown operation was conducted pursuant to a uniform plan crafted and supervised by the defendants. The parties further agree that the shakedowns occurred consistent with that plan, which tightly controlled each aspect of the shakedown without any discretion whatsoever. The defendants admit that in their brief before the district court at Record 491 at page 14, and there are several examples in the testimony of defendants themselves regarding those admissions. Your Honors have asked some questions of my friend on the other side regarding what goes to the merits and what goes to the question of commonality and how Walmart plays into that. In Inree Allstate, a case decided last year, this court said that to decide class certification, the court has to examine evidence for its cohesiveness while studiously ignoring its bearing on the merits questions. And so that's consistent with Walmart and Bell and the other cases that have looked to see whether the evidence, even when examining that evidence does go to the merits. The inquiry in Walmart is whether that evidence was cohesive such that a question could be decided for or against the party on a class wide basis. In this case, that is present. The parties admit there is a uniform plan. They admit the shakedowns occurred consistent with that uniform plan and the dispute, which both sides certainly hotly dispute the versions of what that plan contains and its constitutionality. That's a question for the merits that there is no dispute that the evidence is cohesive as to the class as a whole. With regard to these 22 supervisory defendants and that the resolution of this case will resolve as a matter for all class members, whether that plan is as defendants contend or whether that plan is as plaintiffs contend and whether that plan then was constitutional. How does the fact that there are four different facilities involved here impact the analysis? So the defendants strenuously testified that the plan did not change between the facilities. The defendants, particularly defendants White and McAllister, oversaw the shakedowns at the four facilities to ensure that the plan did not change and was not deviated from amongst those four facilities. In our view, there is no difference between the fact that these occurred at four different facilities, except insofar as both sides admit that a different space was utilized as the holding area for class members when they were brought out of their cells. So I believe in Menard, it might have been the cafeteria, whereas at Lawrence it was the gym. Those minor variations, I think both sides have acknowledged, are not material to the question of the contents of the plan or the constitutionality of the plan. And I guess I would just say at most, if this court had some concerns about the fact that these four different facilities might have some need to have separate treatment, that's certainly quite an easy fix that the district court can make along the way. Our class representatives, there are class representatives from each of those four facilities. And so to the extent that as the evidence comes in on the merits and there is some distinction between the four that the court determines warrants separate trials, from my view, that would be quite an easy fix. The district court didn't really take on some of the predominance arguments here. The district court's ruling on predominance was fairly short and didn't even talk about the elements of the claim. We have said in the past that an evaluation of predominance begins with the elements of the underlying claim, and that wasn't done here. How should that impact our analysis, Ms. Grady? So I think the court took the dispute as it was presented to it. And so where a court comes, you know, addresses and is called on to recall a dispute that has nothing to do with Rule 28 or Rule 23B factors and instead only focuses on the merits, I think that's a very different situation than when there's a dispute about predominance that really goes to predominance itself. On the merits of the claim, there was really no dispute about how those merits impacted the case. Looking at the district court's decision, it does discuss what the claims are and what the general standards are. It doesn't go into the level of detail that certainly will be required at summary judgment, but I think that's a result of the party's framing of their dispute and the court's correct determination that this was a dispute about the merits that made class certification entirely appropriate given the admissions by both sides. I'm happy to talk about them. I want to ask one question. At this point, are you only focusing on the policy and a plan as opposed to how it affects individuals? I use the word policy and plan as the overview. Yes, the plaintiff's claim in this case against these supervisory defendants are that they crafted a plan that was intended to humiliate and harass class members and cause them psychological pain. The reason that this proceeding will drive the litigation forward is that if a jury ultimately finds for the class members, then no one can dispute that there was a plan that intended to inflict psychological pain and was conducted for the purposes of harassment. If, on the other hand, the jury finds that that was not the intent, then despite the fact that there may be individual claims against individual TAC team officers, that their particular shakedown nevertheless was humiliating and done in a way that humiliated them. They will not be able to rely on any allegations about the policy or plan. In fact, to the contrary, given as established that the policy for the shakedowns was constitutionally sound, and that's precisely the circumstances that this court faced in Bell. And in both Bell and in the court's discussion of Bell and Dansell, this court recognized that a resolution like that fits neatly within the reasons to certify. And I think the court, it's worth noting here, I think two things. First, the court itself recognized the superiority and efficiency of class certification here. There were 20 different lawsuits that were filed pro se by individual class members that were consolidated with this case. And so the district court rightly recognized that there were lots of individuals, individual trials that would be required on the same question with precisely the same evidence. And that that itself was supportive of certification so that from the perspective of both sides, this question could be answered once and for all, rather than one trial after the other with the same evidence, asking the same question. And frankly, in that sense, defendants should welcome certification because in a proceeding like that, each class member would get to try to prove their case and would only benefit if anyone before them had won and not suffer if anyone before them had lost. Class certification in this case resolves that for all class members in a single proceeding and is particularly an efficient way to do it given the amount of evidence that is in play that would be necessary to bring in to resolve these claims. If the plaintiffs lose against these supervisory officers on the question of whether or not the policy or agreed uniform shakedown was unconstitutional, can they proceed against these particular officers individually? So I think there is a theoretical possibility that a class member who alleges that someone on site saw their particular shakedown might be able to bring a claim against them for directly failing to intervene. I think practically that's very unlikely to happen, and that's legally not a problem because as this court recognized in Bell and Dansel, the evidence and the theory that will underlie that claim will be entirely different. So that's my question. It would be for a failure to intervene as opposed to an Eighth Amendment claim that you're bringing here? Yes, we know that the defendants did not personally conduct these shakedowns. They were supervising, and so there is a theoretical possibility that a class member, notwithstanding a jury finding in defendants favor on this case, could say, well, my particular case, this supervisory defendant saw me. So I think there is a theoretical possibility that a class member, notwithstanding a jury finding in defendants favor on this case, could say, well, my particular case, this supervisory defendant saw me. Well, I'd like to inject one other question, then, as far as the commonality of it all. The way I read this is that the prisoners were told to take off their underclothes and then put on their overclothes, and that's when they were lining up and complaining. Is that uniform throughout all four prisons, or was that a policy for all four prisons? Yes, and there are certain aspects of that that are disputed by the parties and certain aspects of that that are not. There is no dispute that following the strip search, all prisoners were ordered to put on what's commonly referred to as their prison blues, but were expressly forbidden from putting underwear on. That is undisputed between the parties, but not only is it undisputed, it's undisputed that it occurred at all four facilities. What is disputed, but what both sides agree was uniform between the four facilities is plaintiff's evidence demonstrates that they were then ordered to line up such that their genitals were forced to make contact with the prisoner in front of them in line. Defendants dispute that that was the plan, but both sides agree that the line formation remained uniform throughout the every day of the shakedowns at all four facilities that issue here. But they had their overclothes on, underwear off, but overclothes on. They weren't naked in other rooms. It's true that they weren't naked from plaintiff's perspective. A jury could easily conclude that forcing prisoners to make contact such that their genitals made contact with the prisoner in front of them in line. Is unconstitutional and is intended to harass and humiliate class members, notwithstanding that there is a thin layer of clothing that separates the actual genitals of the class member from the body of the person ahead of him in line. That is a question that goes squarely to the merits and we think a jury will find in our favor for that given defendant's admission that there's no legitimate penological purpose for requiring class members to line up in that fashion. But regardless, the fact that it was uniform, the fact that it was an aspect of the shakedown that provided the tech team officers no discretion, that is the relevant inquiry for Rule 23's purposes. Because as this court has repeatedly recognized, Rule 23 is a procedural vehicle. It does not address who should win because classes can lose as well as win. It addresses whether a class may move forward as a unit and for that purpose, the inquiry looks to the cohesiveness of the evidence, not its ultimate ability to win the day at the end. On that score, the district court correctly recognized that the party's disputes center on the merits of the claim and not on the ability of plaintiffs to show that they satisfied Rule 23. The district court acted within its discretion and we ask this court to affirm certification. Thank you, Ms. Grady. General Notes, we'll go back to you for rebuttal. Thank you, Your Honor, and I'd like to make just one point on commonality and then one on predominance. I think on commonality, Judge St-Yves, even though you stated your question twice, I may not have understood it. What you may have been asking is if we think that at the commonality stage, plaintiffs need some evidence of the unconstitutional aspects of the shakedown. So here that would be the reverse strip searches, for example. The answer is yes. And our view is that under Walmart, they would need significant proof of the reverse strip searches and the other unconstitutional aspects of the shakedown. And they didn't have it here for the reasons that we explain in our brief. On predominance, the point that I would like to make is that answering, even if there is a common policy question here, answering that question is going to resolve only a very small part of this case. We disagree with the other side's position that any individual claims would be on a completely different legal theory. They'd be on the same theory, which is that I was subjected to an unconstitutional shakedown and they would use the same evidence. The inmates' account of what happened, which could be corroborated by other inmates' accounts about what happened. I was a little surprised to hear my opposing counsel say that what other inmates said would not be admissible. I think it's actually corroborating evidence. And you raised the elements, Judge St. Eve. It's very important to look at the elements of an Eighth Amendment claim. A policy is not an element of an Eighth Amendment claim. There are two elements. One is that there have been objectively unreasonable conduct. And the other is an intent to harass and humiliate. And I think when you look at the elements, it's quite clear that because a policy is not an element, resolving the policy question is going to address only a very small part of this case. Which I will remind the court is a B3 damages class. And the court has repeatedly said that those are the exception and not the rule. And I see my time is really up. So thank you for your patience. Thank you to both counsel. We will take the case under advisement. Thank you, Ms. Brady. Thank you, General Luce. Thank you.